

ב"ה

Elie C. Poltorak
(718) 989-9814
elie@poltoraklaw.com

December 23, 2010

**VIA ECF**

Hon. Carol B. Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Blumenthal Distributing, Inc. dba Office Star Products et ano. v. Executive Chair, Inc. dba Shop Seating of Brooklyn* (Case No. 1:10-CV-01280 (CBA-SMG))

Dear Judge Amon:

We represent the Defendant in the above-captioned matter. Defendant respectfully seeks leave of the Court to submit a brief Reply in further support of its Written Objections (the "Objections") to Magistrate Judge Gold's Report and Recommendation (the "Report") regarding Plaintiff Blumenthal Distributing, Inc.'s ("Blumenthal") motion for a preliminary injunction (the "Motion"), and that upon granting of such leave, this letter be deemed Defendant's Reply.

With respect to Blumenthal's patent claim, even if *arguendo* Blumenthal is deemed to technically have standing to make its motion, it has nonetheless *failed to show a likelihood of success* in its standing to bring a claim for patent infringement. Blumenthal's alleged standing is supported solely by self-serving, conclusory declarations by the Plaintiffs herein (submitted in its Reply on the Motion). Blumenthal has not cited a single case where a preliminary injunction has been granted on the basis of an oral contract alleged by a party.

Furthermore, as stated in Defendant's Objections, the cases cited by Blumenthal and the Report are inapposite: In *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed. Appx. 697, 706 (Cir. 2008), "the district court denied summary judgment [against the plaintiff for lack of standing] finding that Aspex had raised at least a genuinely disputed issue of material fact that it had an implied or oral exclusive license," where the plaintiff's testimony was corroborated by substantial evidence. *Waymark Corp. v. Porta Sys. Corp.*, 334 F.3d 1358 (Fed. Cir. 2003), reversed *sanctions* granted by a district court against a plaintiff who asserted standing on the basis of an alleged oral license. Finally, *Weinar v. Rollform, Inc.*, 744 F.2d 797 (Fed. Cir. 1984), sustained a *jury verdict* crediting testimony of an oral license.

47788



Hon. Carol B. Amon
December 23, 2010
Page 2

Moreover, Blumenthal has repeatedly failed to set forth the terms of such alleged oral license, thereby precluding an analysis of such alleged contract's validity under the law of the (undisclosed) state in which it was entered (barring an oral choice-of-law agreement). *See, e.g., Weinar*, 744 F.2d at 807 ("Rollform has shown nothing in the general contract law of the state in which the contract was formed (New York) to indicate that the contract was void or defective.")

With respect to its unfair competition claim, Blumenthal does not even attempt to defend the Report's finding of secondary meaning. Instead, Blumenthal relies on its claims under New York law, on the grounds that New York law does not require proof of secondary meaning as an element of unfair competition. However, as set forth in the Objections, such reliance is misplaced due to the Report's erroneous conclusion that, under New York Law, intentional copying suffices to establish the likelihood of confusion.

"To succeed under an unfair competition claim [under New York law], a plaintiff must demonstrate a likelihood of confusion and bad faith." Report at 20 (citing *Kraft Gen. Foods, Inc. v. Allied Old English, Inc.*, 831 F. Supp. 123, 135 (S.D.N.Y. 1993)). Additionally, New York law requires "that that a trade dress be 'distinctive' in order to be protected." *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 11 (2d Cir. 1987) (citations omitted). Being that a "product design cannot be inherently distinctive," *distinctiveness can only be shown by proving "secondary meaning."* Report at 13 (citing *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209-10 (2000); *Le Sportsac, Inc. v. K Mart Co.*, 754 F.2d 71, 75 (2d Cir. 1985)). Hence, Blumenthal's argument fails.

The Report cites *20th Century Wear* and *Perfect Fit Industries v. Acme Quilting Co.*, 618 F.2d 950, 954 (2d Cir. 1980), in support of the proposition that "[if] there was intentional copying the second comer will be presumed to have intended to create a confusing similarity of appearance and will be presumed to have succeeded." Report at 20-21. However, as set forth in Defendant's Objections, such analysis does not apply to product designs that are not intrinsically decorative. Moreover, neither the Report nor Blumenthal cite a single case granting an injunction under New York law on the basis of intentional copying of a *product design*.

In fact, such an application would run counter to New York law's rationale for the lack of a "secondary meaning" requirement, as set forth by Judge Learned Hand: Because the copying of any particular trade dress "'make-up' *that in itself has no conceivable value*," can only indicate an attempt to confuse consumers as to the product's origin, "it is generally true that, as soon as we see that a second comer in market has, *for no reason that he can assign, plagiarized*

47788



*the 'make-up' of an earlier comer*, we need no more. . . we are content to accept his forecast that he is 'likely' to succeed" in causing such confusion. *Am. Chicle Co. v. Topps Chewing Gum, Inc.*, 208 F.2d 560, 562-63 (2d Cir. 1953) (emphasis added). By contrast, a second comer has every reason to imitate a well-designed, aesthetically pleasing product, as is the practice of any generic manufacturer. Hence, intentional copying of a product design that has not attained "secondary meaning" does not indicate that the second comer sought to confuse consumers and is not an indication of bad faith on his part. *See also, Le Sportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir. 1985) (holding that the very protectability of the plaintiff's product design turns on the question "Are consumers likely to purchase a LeSportsac bag rather than that of a competitor principally because they find LeSportsac's particular combination of design features aesthetically pleasing, or will they buy principally because the product features serve to identify or distinguish the goods as genuine LeSportsac products?")

In the unlikely event that the Court finds that Blumenthal is entitled to a preliminary injunction solely on the basis of its patent claims, Defendant respectfully requests that the Court grant such injunction without prejudice to Defendant's right to move to vacate the injunction by challenging the patent's validity and alleged infringement. Defendant did not do so in opposing the Motion because, in the absence of any evidence of an exclusive license, Defendant believed its objections to Blumenthal's standing sufficed to dispose of the patent claim. Blumenthal only asserted the existence of an *oral* contract after the Motion was fully briefed, in response to an order by Judge Gold (dated September 15, 2010) directing the production of the alleged license agreement.

Respectfully submitted,

POLTORAK PC

Elie C. Poltorak

ECP:aa

cc: Edward R. Schwartz, Esq., CHRISTIE, PARKER & HALE, LLP (via ECF)

47788